MACKENZIE v. SODEN MINERAL SPRINGS CO. et al.

(Supreme Court, Special Term, New York County.   July 1, 1891.)

INJUNCTION—WHEN LIES—UNAUTHORIZED USE OF PHYSICIAN'S NAME.
    Injunction will lie at the suit of a physician to restrain the unauthorized use of a
    fac simile of his signature in advertising a medicine.

Action by Sir Morell Mackenzie against the Soden Mineral Springs Company and the Eisner & Mendelson Company to enjoin defendants from using plaintiff's name as an advertisement on certain medicine, and for damages by reason of such use of his name.   Plaintiff moves to continue an ex parte injunction.   Motion granted.

The complaint was as follows:

"The plaintiff above named complains of the defendants, and alleges:

"First. That plaintiff is a physician and surgeon residing in London, England, and practicing his profession there and elsewhere; that plaintiff, for his attainments and services in the cause of medical science, has been knighted, and is widely known in England, America, and elsewhere by his name and title of Sir Morell Mackenzie, as a specialist in diseases of the throat, and as such is frequently consulted by physicians and others in and from the United States of America, where he has a widespread and well-established reputation as an authority upon the treatment of diseases of the throat.

"Second. That defendant Soden Mineral Springs Company, Limited, is a domestic corporation, organized and existing under the laws of the state of New York, with a capital of two hundred and fifty thousand dollars, and is extensively engaged in the manufacture and sale of a medical preparation known and described by it as 'Soden Mineral Pastilles,' as its sole business; and, upon information and belief, that the defendant the Eisner & Mendelson Company is a foreign corporation, engaged in business in the city and county of New York, and that it is acting as the agent for the sale of the said Soden Mineral Pastilles.

"Third. That the defendants, as an inducement to the public to purchase said pastilles, and as evidence of their merit, have placed around each box of said pastilles a printed or written slip containing the words, 'The Soden Mineral Pastilles are specially beneficial in catarrhal diseases of the air passages, which include sore throat, coughs, bronchitis, and lung troubles,' and after said words there is printed the plaintiff's name, 'Sir Morell Mackenzie,' in pretended fac simile of this plaintiff's signature; that one of said printed slips, taken from a box of said pastilles, is annexed hereto, and marked 'Exhibit A.'

"Fourth. That defendants have extensively advertised and are now extensively advertising said pastilles throughout the United States, and in such advertisements are setting forth that the same are approved and commended by this plaintiff, and stating, among other things, in such advertisements, that 'the genuine Soden Mineral Pastilles must have the testimonial and signature of Sir Morell Mackenzie around each box.'   That a copy of one of said advertisements, taken from the New York Times of March 18, 1891, is annexed hereto, and marked 'Exhibit B.'

"Fifth. That defendants are also issuing with said pastilles a circular containing a printed letter purporting to be of this plaintiff, of which the following is a copy:                '19 HARLEY STREET, CAVENDISH SQUARE, W.

"'Sir Morell Mackenzie writes: "I have watched the effects of the Soden waters for a considerable period, and regard them as extremely valuable in obstinate catarrhal affections of the throat.   The small amount of iron which they contain renders them very useful in the stages of throat consumption, and they do good in nearly all cases of relaxation of the mucous membrane. The pastilles offer a most convenient method of using the waters, producing

both a local and general effect.   They are especially beneficial in catarrhal diseases of the air passages.   I have frequently found them of great service in the case of singers and public speakers.

[Signed]                           "'"MORELL MACKENZIE, M. D., London,
Late Physician to the London Hospital, Consulting Physician to the Hospital for Diseases of the Throat, Golden Square, and Physician to the Royal Society of Musicians.

"'"2d *September*, 1887."'

"That a copy of said circular is annexed hereto, and marked 'Exhibit C.'"

"*Sixth.* That said defendant the Eisner & Mendelson Company, as sales agent of the defendant the Soden Mineral Springs Company, Limited, or on its own behalf and for its own profit, has published and circulated said advertisements, circulars, and wrappers containing alleged letters and statements by plaintiff commending said Soden Mineral Pastilles, and continues to publish said advertisements, circulars, and wrappers extensively.   That said defendants have offices together, and are united in some manner, the particulars of which are unknown to plaintiff, in the sale of said Soden Mineral Pastilles, and in the publishing and circulation of said circulars, wrappers, and advertisements, calling attention to and commending the same, and both said defendants derive profit from such unauthorized use of plaintiff's name.

"*Seventh.* The plaintiff has no knowledge of the merits or value of the said pastilles, which are being made and sold by defendants, nor of their composition or effect.   That he does know of a preparation made of the Soden waters, evaporated, and has guardedly, and under certain circumstances, recommended the same.   But this plaintiff has not at any time given to defendants any right or authority to use his name in commendation of their said pastilles, or in any other manner whatever, nor to use any of the advertisements or statements purporting to come from plaintiff, and thus fraudulently held out to the public as being the plaintiff's.

"*Eighth.* The plaintiff denies that the letters and statements attributed to him in said Exhibits A, B, and C, or any of the other advertisements and circulars issued by defendants, are true copies of any letters which he has at any time heretofore written.   He denies that he has at any time written any letters whatever to these defendants, or either of them, and he avers that if at any time any letters have been written by him to any person whomsoever, in which he commended any pastilles or preparations made from the Soden mineral spring water, said letters were not for publication, and that whatever right of publication existed in such letters belonged to this plaintiff.

"*Ninth.* That said use of plaintiff's name by defendants, and trading upon his professional reputation in their said advertisements, circulars, wrappers, and other publications, is a fraud upon the public and upon this plaintiff, is wholly unauthorized, and is injurious to plaintiff's professional standing and reputation, and offensive to his feelings.   That as it is part of the written and unwritten code of medical ethics in the civilized world that a practicing physician shall have no interest in any proprietary medicine or surgical instrument, and that he shall not recommend any medicines which are known as 'patent or proprietary medicines' for general use by the public, without their being recommended for the special case of the disease under the advice of the physician, any such ownership or recommendation by a physician does injury to the public, casts reproach upon him, the physician recommending the same, indiscriminately injures his medical standing and reputation, and commits lasting and permanent injury to his standing with patients and his professional brethren, not only because such ownership or recommendation constitutes a breach of professional ethics, but because such recommendation implies a disregard of the scientific truth that no medicine of any kind can be safely recommended to the laity for general use without regard to the special circumstances of the patient's case.   That in addition to the breach of professional

etiquette and duty thus committed by a physician who recommends proprie-tary medicines for purposes of advertisement, and for general public con-sumption, a suspicion is cast upon the physician that he has a personal pecun-iary interest in the medicine that he recommends or is thus recommended, to the great and irremediable loss of his professional prestige and personal stand-ing.

"*Tenth.* That plaintiff has received many intimations and evidences of loss of esteem and practice arising from defendants' said publications, and has come to personal pecuniary loss thereby. That the continuation of these pub-lications injures, and has a tendency to injure more and more, the professional standing of the plaintiff and the income which he derives from his profession, and that much injury in that regard has already resulted to plaintiff there-from, to his damage, as he is informed and verily believes, in the sum of more than ten thousand dollars, ($10,000.)

"*Eleventh.* That there is no other physician of the name of plaintiff, having any repute as an authority on diseases of the throat, and that in the use of the name of Sir Morell Mackenzie in the said advertisements, circulars, wrap-pers, and other publications, defendants refer to and mean this plaintiff.

"*Twelfth.* That plaintiff asks for an injunction *pendente lite,* and for a permanent injunction against said unwarranted and improper use of his name by these defendants. That plaintiff has no adequate and available remedy at law against said publications by any action for damages, inasmuch as the in-jury is a continuous one, and would involve endless litigation, and is further-more of such a nature, affecting plaintiff's reputation in places far remote from each other throughout Great Britain and America, that its extent could not be measured or estimated, or proof of the full measure thereof procured, and that plaintiff is remediless at law.

"Wherefore, plaintiff prays for judgment: (1) That the defendants, their officers, agents, servants, and sales agents, be forever enjoined and restrained from publishing or circulating any letter or part of a letter written by plain-tiff, or alleged to have been written by him, and from publishing or adver-tising any statement or opinion at any time expressed by plaintiff, or alleged or pretended to have been expressed by plaintiff, regarding Soden Mineral Pastilles, or any other medicinal preparation, and from in any manner using or publishing plaintiff's name in their business, or in aid or furtherance thereof. (2) That the said defendants, their agents and servants, and all other persons circulating or publishing said advertisements, circulars, or wrappers, or any other publication, circular, cut, or device containing any recommendation by plaintiff of said Soden Mineral Pastilles, or having any such advertisements, circular, publication, cut, or device in his or their pos-session or control, be required to surrender the same to be destroyed. (3) For a temporary injunction against the acts aforesaid during the pendency of this action. (4) For such other and further relief as may be just in the premises. (5) For ten thousand dollars ($10,000) damages by reason of the acts aforesaid, together with the costs of this action."

The following affidavits were filed on behalf of plaintiff.

"Simon Sterne, being duly sworn, says that he is the attorney for plaintiff in the above-entitled action; that he is in receipt of letters and communica-tions from plaintiff, complaining of the use of his professional reputation, to his great injury and discredit, by defendants, to further its business and pro-cure a sale of its goods; that this action has been commenced by plaintiff for the relief demanded in the complaint, a copy of which complaint is hereto an-nexed, and that the summons has been issued for service herein; that de-ponent has known the plaintiff, Sir Morell Mackenzie, intimately, for many years, and is well acquainted with his professional career and reputation; that no living physician has acquired or holds so pre-eminent a reputation throughout the civilized world as a specialist and authority in diseases of the

throat; that he has long been the physician to the royal family in England, and was the leading physician to the late Emperor Frederick, of Germany, in his last illness; that he is consulted and his opinion sought for by physicians of eminence throughout England and the United States, and is visited by patients from all parts of the world for treatment of diseases of the throat; that the said plaintiff informs deponent that at one time he addressed a letter to some person, whose name is now forgotten by him, and in which he spoke well of pastilles made from the waters of the Soden mineral springs, but that said letter was in guarded terms, was not intended for publication, was not written or addressed to defendants or either of them, and was not in the language contained in the advertisements, circulars, and wrappers used by the defendants, and which are set forth in the complaint herein, and that plaintiff has no interest in the business of either of the defendants, does not know either of the defendants, has never had any communication with defendants or either of them, and has never given them or either of them any authority to use his name or quote his opinion; that the defendant the Soden Mineral Springs Company, Limited, as deponent has but recently been informed, has since its organization used, and continues to use, plaintiff's name, and his alleged recommendation of its product, as evidence and proof to the public and the medical profession of the purity and merit of its said pastilles, which, as deponent is informed and believes, are its sole product; that the defendant the Eisner & Mendelson Company has likewise, during the times aforesaid, used, and continues to use, plaintiff's name in the same manner; that plaintiff has no knowledge of the said pastilles manufactured and sold by defendants, their ingredients or effect, although they are issued under guaranty of his name, and accompanied by a circular or advertisement that the genuine Soden Mineral Pastilles must have the testimonial and signature of Sir Morell Mackenzie around each box; that such use of plaintiff's name is a grievous injury to plaintiff, and an injustice and imposition upon the public; that plaintiff has suffered in his reputation and standing by reason of the use made of his name by defendants, and the belief that such use was by his authority and permission, or that he was deriving some revenue therefrom, contrary to the ethics of his profession; that deponent is informed and believes that the circulation of said publications, advertisements, circulars, and wrappers is very extensive throughout the United States, and that the use of said pastilles manufactured and sold by defendants has been enormously enlarged because of the belief that defendant's statements regarding plaintiff's recommendation of them were true, and that plaintiff approved of their use; that deponent has examined the defendants' circulars and wrappers, referred to in the complaint, and made Exhibits A, B, and C, annexed thereto, and that he is also informed and believes that other circulars and advertisements are being published by defendants, and that in one newspaper, if not in more, a pretended portrait of the plaintiff herein is printed, as giving further point and force to the allegation that the plaintiff approves of the said Soden Mineral Pastilles, manufactured and sold by defendants. Deponent further says that he has consulted with physicians in the city of New York of prominence, and is informed by them that the publication of the said advertisements, circulars, and wrappers has been very extensive, and has been largely the means of introducing defendants' pastilles into use, and that, if such publication is continued without resistance on the part of the plaintiff herein, the same will greatly injure his professional standing and reputation; that, unless an injunction *pendente lite* is granted herein, plaintiff will suffer constantly increasing injury to his professional repute and income, for which no adequate compensation in damages can be obtained, as the proof of such damages is, in the nature of things, difficult, if not impossible, to secure; that an order to show cause, with less than eight days' notice of motion for the continuance of the injunction herein, is necessary, for the reason that a con-

tinuing and great injury is being done to the plaintiff by the publications complained of, and also because deponent, who is plaintiff's attorney, is on the eve of departure with his family for Europe, and will not be able to argue the motion for a continuance of the injunction if the regular notice of motion is required, and that no other attorney in the city of New York is in the same manner conversant with the facts of this case as is deponent; that no previous application has been made herein for an injunction order."

"Clarence C. Rice, being duly sworn, says that he is a practicing physician in the city of New York, residing and practicing his profession at No. 123 East Nineteenth street, and has been such for ten years; that, in his profession as physician, he devotes himself more particularly and almost exclusively to that branch thereof known as 'laryngology,' being the treatment of diseases of the throat, lungs, and air passages generally; that deponent holds the following offices: Professor of diseases of nose and throat in the Post-Graduate Medical School and Hospital; secretary of the above medical college; consulting physician, Bellevue Hospital, outdoor department and throat department. Deponent knows the plaintiff, Sir Morell Mackenzie, personally, and has been for many years well acquainted with his professional career and reputation. That he is recognized by the medical profession as a very great authority and specialist in diseases of the throat and air passages, and that said plaintiff is consulted by physicians in cases falling within his specialty, and is also visited by patients from all parts of the world, many of whom are sent to him by other physicians; that deponent has seen the advertisements, circulars, and wrappers sent out with Soden Mineral Pastilles by the defendants herein, and which purport to be recommendations of said pastilles by said plaintiff, Sir Morell Mackenzie; that said plaintiff's reputation has suffered among physicians in the United States by reason of the circulations of these publications, where it has been assumed that the statements contained therein were correct copies of letters and statements of Sir Morell Mackenzie, and were put forth by his consent; that deponent is informed and believes that the circulation of said advertisements, circulars, and wrappers is very extensive throughout the United States, and that the use of said pastilles, manufactured and sold by defendants, has been greatly increased because of the belief, based upon such publications, that Sir Morell Mackenzie approved of their use; that such publications, if sanctioned by Sir Morell Mackenzie, would constitute a breach by him of a very important rule of ethics, and one which, as a conscientious physician, he is bound to observe, and that, if such publications continue without resistance on the part of Sir Morell Mackenzie, they will result in a very serious loss of 'prestige and reputation in the United States, and in a loss of professional income; that such loss would have been already much greater than it has been but for the disbelief on the part of physicians that such use of Sir Morell Mackenzie's name was with his consent; that said circulars and alleged recommendations have a tendency to subject said plaintiff to severe criticism by physicians in the United States; that from deponent's knowledge of numbers of people and physicians who consult Sir Morell Mackenzie, and who are residents of the United States, he assumes that a very considerable proportion of said plaintiff's professional income is derived from the professional repute of Sir Morell Mackenzie in the United States among physicians and the laity."

"Before me, John C. New, consul general of the United States of America, on this 30th day of June, 1891, personally came Sir Morell Mackenzie, to me personally known, and upon his oath deposes and says: 'I have never authorized the defendants the Soden Mineral Springs Company, Limited, or the Eisner & Mendelson Company, or their agents or representatives, to make use of my name in endeavoring to sell Soden Mineral Pastilles, and I consider it highly injurious to my reputation that my name should be made use of in the way it has been by the defendants. Loss of reputation by a physician means

loss of income, and I have no doubt that patients from America have been deterred from consulting me, and that American physicians have been prevented sending patients to me, owing to the diffusion of the objectionable circulars in which my name is improperly made use of by the Soden Mineral Company and the Eisner & Mendelson Company. I have never authorized my signature (the signature, moreover, bears no resemblance whatever to my writing) to be used, and, further, I have never stated that Soden Mineral Pastilles do good in sore throats, coughs, bronchitis, and lung troubles, and the statement that they do good to coughs, bronchitis, and lung troubles is absurd, unscientific, and shows a gross ignorance of therapeutics.    It is therefore calculated to seriously injure me in the estimation of all properly educated medical practitioners in America.   A circular issued by the Soden Mineral Springs Agency, 6 Barclay street, New York, which states: "Sir Morell Mackenzie, the famous English throat specialist, says: 'The most distressing thing for a lady is a cold or catarrh; and I cannot understand why they should be so annoyed, when we have such a simple and pleasant remedy in the Soden Mineral Pastilles.'"   I never made such an absurd statement as this, and the circular in which the statement is attributed to me is calculated to bring the ridicule and contempt of all enlightened medical men upon me. Cuttings from American newspapers have been sent to me, not only by physicians with whom I am acquainted in America, but even by perfect strangers, who consider that I ought to be informed that very improper uses have been made of my name.   The statement made by the Soden Mineral Springs Agency, that "the genuine Soden Mineral Pastilles must have the signature and testimonial of Sir Morell Mackenzie around each box," is insulting to me, and calculated to mislead the public, as it implies that I am responsible for the materials out of which the Soden Mineral Springs Agency make their pastilles, whereas, for aught I can do, the pastilles referred to may be made out of indifferent or even deleterious compounds, which have never been derived from the Soden springs.   About three years ago, I gave a guarded opinion to a person of the name of Maurice Gratz.   He was introduced to me by a professional gentleman of good standing, and he stated that he wanted my opinion to enable a number of gentlemen engaged in commerce to determine whether they should form a syndicate with a view to extending the use of the Soden mineral salts.   It was never suggested that my opinion should be employed as a testimonial to induce purchasers to make use of the Soden Mineral Pastilles.'"

"Norbert Heinsheimer, being duly sworn, says that he is a clerk in the office of Simon Sterne, Esq., attorney for the plaintiff herein, and resides at No. 421 Madison avenue, New York; that he has had charge of the management of this cause, and has gathered much of the evidence to be used on the hearing of this motion and in the trial of this cause; that he has visited the office of the Eisner & Mendelson Company, No. 6 Barclay street, a number of times, and has purchased from them, paying cash therefor, a number of boxes of the Soden Mineral Pastilles, which have been offered in evidence heretofore on a hearing of this motion; that he has received from the said company and its employes a number of their circulars advertising the said pastilles, which have been presented to the court on a hearing of this motion, and are attached to the complaint and motion papers therein; that he asked the officers and agents of the said Eisner & Mendelson Company, at their said office, on June 17, 1891, a number of questions in regard to the advertising of the said pastilles, and was informed by a person whose name is unknown to him, but whom he believes to be the book-keeper of the said company, and he was also informed by others, apparently connected with the said company, that at the present time the said company is only 'running' three advertisements of the said pastilles in the newspapers; that at present they are publishing and circulating only the circular attached to the com-

plaint herein, and marked 'Exhibit C;' that the said company gives out all of its advertising through an advertising agent, and that, at the present time, they are not advertising very largely the said pastilles. He was shown, also, in a certain book of the said company, a large collection of advertisements cut out of newspapers, etc. That among them was a wood-cut which he was informed was a portrait of Sir Morell Mackenzie, and that it was being published in several newspapers in various parts of the country. From his conversations with all the said persons at the office of said company, he inferred that the said company advertised the said pastilles itself, and paid the cost thereof."

The injunction was resisted on the following affidavits filed on behalf of defendants:

"Moritz Eisner, being duly sworn, says: 'I am the secretary of the Eisner & Mendelson Company, one of the defendants above named. I have read the complaint herein, and know the contents thereof. The said defendant the Eisner & Mendelson Company is largely engaged in the importation and sale of medical specialties, by which are meant, among other things, such preparations as the water and evaporated products of the Soden mineral springs, mentioned in the complaint, and of the Carlsbad mineral springs, and other articles of the kind. The said defendant is the selling agent of the Soden Mineral Springs Company, Limited, which last-named company has the sole right to sell in the United States the products of the Soden mineral springs, situated at Soden im the Taunus, Germany. The medical preparation called "Soden Mineral Pastilles" is the preparation made of the waters of the Soden mineral springs, evaporated, mentioned in the seventh article of the complaint. Said preparation is made by the Sodener Pastillen Fabric, of Bad Soden im the Taunus, Germany, a corporation organized under the laws of Germany, and which is the owner of said Soden mineral springs. The said pastilles are made in Germany, put up there for shipment, with the wrappers and labels already affixed, and in that state are shipped to the defendants in the United States. No labels or marks of any kind are affixed to the same by either of the defendants. The defendant the Eisner & Mendelson Company is largely engaged in the sale of said pastilles. Said pastilles are the "compressed pastilles of Soden water," mentioned and referred to in an article published by the complainant over his signature in the issue for November, 1887, of the Journal of Laryngology and Rhinology, a scientific periodical published under the management and editorship of Sir Morell Mackenzie, the plaintiff herein. Associated with the plaintiff in the conduct of said periodical are R. Norris Wolfenden, M. D., and others, as may be more fully seen by the first or title-page of the issue of said periodical above mentioned, a copy of which is hereto annexed, marked "Exhibit 1." The article above referred to as published in said issue of said periodical over the signature of the plaintiff is entitled, "Balneo Therapeutics in Throat Diseases," and it is the first or leading article therein. An extract from said article is hereto annexed, marked "Exhibit 2." I am informed and believe that said Journal of Laryngology and Rhinology has at all times had an extensive circulation in Great Britain, the United States, and other countries. It is certain that the waters, substances, and preparations recommended by the plaintiff in said extract are the same as those dealt in by the defendants and mentioned in the complaint. The defendant the Eisner & Mendelson Company has on hand in this country about forty thousand boxes of said pastilles, the selling price of which at retail amounts to about twenty thousand dollars. All of this said valuable property would be rendered unsalable if the injunction prayed for by the plaintiff should be granted. Not only is the said defendant under such contract obligations that it may not change in any respect the form or condition of the boxes as they are shipped by the German company, but if any change were made the goods would be returned by the pur-

chasers as an imitation. It would therefore be necessary for the defendant to return the same to Germany, with little or no prospect of getting back the money paid for them. The heavy duties which have been paid to the government would of course be wholly lost. It would take at least a month, perhaps several months, to bring home to the trade generally the knowledge of the fact that boxes without the distinguishing label might be genuine. In the mean time, sales would wholly cease; and it cannot be doubted that the effects of such an interruption would be a serious blow to the business of the defendant. I believe that the loss which the defendant would thereby suffer would amount to many thousand of dollars. Defendants have expended large sums of money in introducing the said goods, expecting to be reimbursed by profits on future sales. Their present contract engagements are also of large amount, and failure to fulfill said engagements would also render defendant liable to great loss. I verily believe that the granting of a temporary injunction herein, as prayed by plaintiff, would probably inflict upon the defendant the Eisner & Mendelson Company a loss of upwards of fifty thousand dollars; and, in my judgment, security for not less than that amount would be required to protect said defendant in case such injunction should be granted. Neither the plaintiff nor any one in his behalf has ever, to my knowledge, demanded or requested that the defendants, or either of them, should desist or refrain from any of the acts or things by this action sought to be enjoined; nor was I ever informed, otherwise than by the service of the complaint and affidavits herein, that the plaintiff in any wise objected to the advertising methods or any other acts of defendants, or either of them.'"

"Joseph Mendelson, being duly sworn, says: 'I am the treasurer and manager of the Eisner & Mendelson Company, one of the defendants above named. I have read the complaint, and know the contents thereof. I am informed and believe that the defendant the Soden Mineral Springs Company, Limited, is a domestic corporation, organized as charged in the second paragraph; but it is not true that it is extensively engaged, or engaged at all, in the manufacture of a medical preparation known and described by it as "Soden Mineral Pastilles." The defendant the Eisner & Mendelson Company is a foreign corporation, engaged in business in the city and county of New York, and acts as selling agent for the sale of said Soden Mineral Pastilles, and has no other relation with defendant the Soden Mineral Springs Company, Limited. It is not true that the defendants, or either of them, as an inducement to purchase said pastilles, and as an evidence of their merit, has placed around each box of said pastilles a printed or written slip, as set forth in the third paragraph of the complaint. It is, however, true that said pastilles have been extensively advertised and are now advertised throughout the United States, but not by defendant last named, and such advertisements set forth that the same are approved and commended by plaintiff; and it is stated, among other things, in such advertisements, that the genuine Soden Mineral Pastilles must have a testimonial and the signature of Sir Morell Mackenzie around each box; that a copy of one of said advertisements, taken from a New York Times of March 18, 1891, is annexed to the complaint as Exhibit B. But I deny, upon information and belief, that the use of plaintiff's name in any way in which it is used by defendants or either of them is unauthorized. The Sodner Pastillen Fabric, of Bad Soden im Taunus, in Germany, is a corporation under the laws of Germany, and is the owner of the Soden mineral springs in Germany, and is engaged in manufacturing the preparation made of the Soden waters evaporated, mentioned in the seventh paragraph of the complaint, under the supervision of the royal sanitary counselor, Dr. W. Stoltsing, at Bad Soden im Taunus. The defendant the Soden Mineral Springs Company, Limited, has the sole right for the United States from said German corporation to sell the Soden waters of said corporation, made of the Soden water evaporated, as mentioned in the seventh paragraph of said

·complaint, and the sole business of said defendant Soden Mineral Springs Company, Limited, is the sale of said waters in the United States, and that the defendant the Eisner & Mendelson Company is the selling agent for the United States for said Soden Mineral Springs Company, Limited. The medical preparation called "Soden Mineral Pastilles" is the preparation made ·of the Soden waters evaporated, mentioned in the seventh paragraph of the bill. The defendants receive said preparation from the German company in boxes, and each box has around it a slip of paper containing the words mentioned in the third paragraph of the complaint. That, by the terms of the contract between the German company and the American company, no change can be made in the boxes shipped by the German company; that this preparation of the Soden waters evaporated is one which is widely known and sold in England and on the continent of Europe, and has for the past five or six years been widely advertised there; that the letter, a copy of which is given in paragraph five of the complaint, has during the past three years been widely printed and published in connection with the sale of said pastilles in the United States, in England, and on the continent of Europe, and that the defendant believes that the original thereof is in the possession of the said German corporation; that the company in England, which has the same right for England as the defendant the Soden Mineral Springs Company, Limited, has for the United States, is called the "Soden Mineral Produce Company," with offices at No. 10 Dyer's building, in London; that it has for about a period of three years past been advertising the said Soden Mineral Pastilles as widely as the same have been advertised in this country, if not more so, and has made the same use of the plaintiff's name, and statements made by him in regard to the said Soden Mineral Pastilles, as has been made in this country. The originals of communications from the plaintiff, of which the slip mentioned in paragraph three in the letter, mentioned in paragraph five of the complaint, purport to be copies, are not in the possession of either this defendant the Soden Mineral Springs Company, Limited, but that the same are in the possession, as this defendant is informed and believes, of the original German company, hereinbefore mentioned; but this deponent has seen the foreign newspapers and many of the foreign circulars containing the said letters, including the circulars used in Great Britain, and the defendant calls particular attention to an article in the Journal of Laryngology and Rhinology of November, 1887. I have read the affidavit of Moritz Eisner herein, verified the 22d day of June, 1891, and know the contents thereof. The same are true, of my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. Especially do I confirm the statements made therein with regard to the probable damage to the defendant the Eisner & Mendelson Company. Already the effects of the preliminary injunction have begun to be felt, and threaten great damage to the general business of the company, by injuring its reputation in the trade and among its customers. The fact that such injunction has been granted has been widely published, and I annex hereto extracts from the New York World of June 19, 1891, and the New York Evening Post of the same date, marked, respectively, Exhibits 1 and 2. I have this day been informed by a person who was present at the meeting of a medical association at Atlantic City, held on the 20th day of June, 1891, that representatives of a rival firm had been showing said extracts to physicians attending the convention. I have also been requested by a customer this day to take back a quantity of pastilles, upon the ground that the same could not be sold to the public.'"

*Simon Sterne,* for plaintiff. *Melville Egleston,* for defendants.

TRUAX, J. A motion having heretofore been made on behalf of the plaintiff for an order of injunction during the pendency of this action, or until the

further order of the court, now, on reading and filing the complaint herein, verified the 17th day of July, 1891, and the affidavits of Simon Sterne, verified the 16th day of June, 1891, Clarence C. Rice, M. D., verified the 17th day of June, 1891, Morell Mackenzie, verified the 30th day of June, 1891, and of Norbert Heinsheimer, verified the 9th day of July, 1891, in support, and the affidavits of Moritz Eisner, verified the 22d day of June, 1891, and of Joseph Mendelson, verified the 23d day of June, 1891, in opposition, from which it satisfactorily appears to me that the plaintiff demands and is entitled to an injunction against the said defendants restraining the commission and continuance of all acts which during the pendency of the action would produce injury to the plaintiff, to-wit, publication of certain advertisements, circulars, and wrappers of a certain proprietary medicinal preparation known as "Soden Mineral Pastilles," which advertisements, circulars, and wrappers contain copies of alleged letters of plaintiff commending said mineral pastilles, and from using the name of plaintiff without his consent as a guaranty of the merit of said medicinal preparation, and that the commission or continuance of this act would produce injury to the plaintiff, in that the plaintiff would thereby suffer damage to his professional standing and income as a physician, and an infringement of his right to the sole use of his own name, and that such use of plaintiff's name and reputation, contrary to his wish, is, under the circumstances in the complaint and affidavit detailed, misleading and prejudicial to the public interest, and the plaintiff having given an undertaking in the sum of $500, as required by law, and after hearing Simon Sterne, Esq., of counsel for the plaintiff, and Melville Egleston, Esq., of counsel for defendant Eisner & Mendelson Company, on motion of Simon Sterne, Esq., attorney for the plaintiff, it is hereby ordered that the defendant the Eisner & Mendelson Company and the defendant the Soden Mineral Springs Company, Limited, their agents, attorneys, servants, and all others acting in aid or assistance of said defendants, and each and every of them, be and they are hereby restrained, prohibited, and enjoined, under the penalties of the law prescribed, from publishing any letter or part of a letter written or alleged to have been written by plaintiff, and from publishing or advertising any statement or opinion at any time expressed or alleged to have been expressed by plaintiff, regarding Soden Mineral Pastilles, or any other medicinal preparation, and from in any manner using or publishing plaintiff's name in their (defendants') business, or in furtherance or aid thereof, during the pendency of this action, and until the final judgment herein shall have been duly entered, except that the said defendant the Eisner & Mendelson Company may, during the pendency of this action, and until the entry of final judgment herein, publish true and correct extracts from the published writings of Sir Morell Mackenzie, the plaintiff, or writings by him authorized by him to be published, giving the date and source of such publication, but without using the signature of the plaintiff, or a pretended *fac simile* thereof, and only in such a way as not to convey the impression that the said extracts had been addressed in the form of a letter to the defendants, or either of them; and that the defendant the Eisner & Mendelson Company pay to the plaintiff's attorney $10, costs of this motion.